**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| **PATENT GROUP** | § | |
| | § | |
| **PLAINTIFF,** | § | **CIVIL ACTION NO.** |
| | § | **6:10-CV-147** |
| **VS.** | § | |
| | § | |
| **MAG INSTRUMENT, INC.** | § | |
| | § | |
| **DEFENDANT.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**<u>DEFENDANT MAG INSTRUMENT, INC.'S MOTION TO TRANSFER PURSUANT TO
28 U.S.C. § 1404 (A) AND BRIEF IN SUPPORT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

I.  INTRODUCTION .....................................................................................................1

II.  ARGUMENT .............................................................................................................3

    A.  Standards for Section 1404(a) Transfers...............................................................3

    B.  Suit could have been brought in The Central District of California because Mag is headquartered in that district.......................................................................4

    C.  Relator Plaintiff's Choice of Forum is Entitled to Little Deference.......................5

    D.  All Private Factors Weigh in Favor of Transfer to the Central District of California. .....................................................................................................................6

        1.  Sources of Proof Are Located in California. ..............................................7

            a.  Virtually All of the Witnesses Are Located in California. ..............7

            b.  The Overwhelming Majority of Critical Documents are in California. ......................................................................................9

        2.  The Availability of Compulsory Process Favors the Central District of California. ................................................................................9

        3.  The Cost of Attendance of Willing Witnesses Favors the Central District of California. ...............................................................................10

        4.  Other Private Factors: The Center of Gravity of This Litigation Lies Squarely in the Central District of California. ..................................11

    E.  Public Interest Factors Weigh in Favor of the Central District. ...........................12

        1.  The Central District of California is No More Congested Than the Eastern District of Texas.........................................................................12

        2.  The Eastern District Has No Local Interest. .............................................13

        3.  Both Forums are Familiar with the Law and No Conflicts Should Arise with Transfer of this Case to the Central District of California. ...............................................................................................15

III.    CONCLUSION AND PRAYER FOR RELIEF ................................................................15

CERTIFICATE OF SERVICE .......................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*,
    358 F.3d 337 (5th Cir. 2004) ..................................................................4

*Anchor Wall Systems, Inc. v. R&D Concrete Products, Inc.*
    55 F. Supp. 2d 871 (N.D. III. 1999)...................................................14

*Ardco Inc. v. Page, Ricker, Felson Marketing, Inc.*
    25 U.S.P.Q. 2d 1382 (N.D. III. 1992)............................................10, 12

*Balawajder v. Scott*,
    160 F.3d 1066 (5th Cir. 1998) ..............................................................4

*Boreal Laser Inc. v. Coherent, Inc.*
    22 U.S.P.Q.2d 1559 (S.D.N.Y. 1992)...................................................14

*Brule Research Assocs. v. A.O. Smith Corp.*
    No. 1:08cv977...................................................................................15

*Forest Group v. Bon Tool Co.*,
    590 F.3d 1295, 1304 (Fed. Cir. 2009)...............................................1, 2

*Fuji Photo Film Co. v. Lexar Media, Inc.*
    415 F. Supp. 2d 370 (S.D.N.Y. 2006)..................................................12

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)...........................................................................14

*ICHL, LLC v. NEC Corp. of America*,
    2009 WL 1748573 (E.D. Tex., June 19, 2009)..................................7, 11

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)........................................................6, 10

*In re Horseshoe Entertainment*,
    337 F.3d 429 (5th Cir. 2003) ...........................................................11

*In re TS Tech USA Corp*,
    551 F. 3d 1315 (Fed. Cir. 2008)........................................................6, 14

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................11

*In re Volkswagen of America, Inc.,*
    545 F.3d 304 (5th Cir. 2008) (en banc) ............................................................3, 4, 6, 10, 13

*Koster v. Lumbermens Mut. Cas. Co.,*
    330 U.S. 518, 524 (1947) ...........................................................................................6

*Laitram v. Hewlett-Packard Co.,*
    120 F. Supp. 2d 607 (E.D. La. 2000) ......................................................................12

*Matra Et Manurhin, v. International Armament Co.,*
    628 F. Supp. 1532 (S.D. N.Y. 1986) .......................................................................14

*Novartis Vaccines and Diagnostics, Inc. v. Wyeth, et al.,*
    2010 WL 1374806 (E.D. Tex., March 31, 2010) ....................................................10

*PartsRiver, Inc. v. Shopzilla., Inc.,*
    2009 WL 279110 (E.D. Tex., Jan. 30, 2009) ...................................................6, 7, 13

*Proshot Golf v. Leading Edge Techs.,*
    1996 WL 673265 (N.D. Tex. 1996) .........................................................................11

*Ricoh Co. v. Honeywell, Inc.*
    817 F. Supp. at 482 n. 17 .........................................................................................15

*Ross v. Buckeye Cellulose Corp.,*
    980 F.2d 648 (11th Cir. 1993) ............................................................................7, 10

*San Francisco Tech. v. Adobe Sys.*
    No. C 09-6083 RS ....................................................................................................15

*Shoemaker v. Union Pacific Railroad Co.,*
    233 F.Supp.2d 828 (E.D. Tex. 2002) ......................................................................11

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) ....................................................................................................4

*Timson v. Simpson,*
    518 F.3d 870 (11th Cir. 2008) ..................................................................................5

*U.S. v. Texas Tech Univ.,*
    171 F.3d 279 (5th Cir. 1999) ....................................................................................5

*United States ex rel. LaValley v. First Nat'l Bank of Boston,*
    625 F. Supp. 591 (D.N.H. 1985) ..............................................................................6

*United States ex rel. Roop v. Arkray USA,*
    2007 WL 844691, *2 (N.D. Miss. 2007) .................................................................5

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .................................................................................................4

## STATUTES

28 U.S.C. § 1391(b)(1) ...........................................................................................5

28 U.S.C. § 1391(b)(2) ...........................................................................................5

28 U.S.C. § 1391(c) .................................................................................................5

28 U.S.C. § 1395(a) .................................................................................................5

28 U.S.C. § 1404(a) ................................................................................... 2-4, 11, 12, 16

35 U.S.C. § 292 .....................................................................................................1, 2

## OTHER AUTHORITIES

15 WRIGHT, MILLER & COOPER § 3848, at 127-29 .............................................6

15 WRIGHT, MILLER & COOPER § 3849, at 181-82 ...........................................12

15 WRIGHT, MILLER & COOPER § 3854, at 293 .................................................15

*Donald J. Rupert, Trolling for Dollars: A New Threat to Patent Owners*, 21 No. 3
   INTELL. PROP. & TECH. L.J. 1 (2009) ...........................................................2

www.uscourts.gov/caseload2007/tables/C05Mar07.pdf. ......................................13

## DEFENDANT MAG INSTRUMENT, INC.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404 (A) AND BRIEF IN SUPPORT

COMES NOW, Mag Instrument, Inc., Defendant in the above-entitled cause, and files this Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) and Brief in Support, and would respectfully show the Court as follows:

### I.

### INTRODUCTION

Late last year, the Federal Circuit decided *Forest Group v. Bon Tool Co.,* expanding the reach of the patent false marking statute, 35 U.S.C. § 292, to require civil penalties on a "per-article" basis. 590 F.3d 1295, 1304 (Fed. Cir. 2009). The statute is one of a handful of federal *qui tam* statutes still on the books, and it carries a maximum $500 penalty for every "offense." By permitting penalties to be assessed on a "per-article" basis, the *Forest Group* decision has opened the floodgates to a surge of false marking suits against manufacturers who market thousands or millions of patented products each year. Because the statute splits the penalty 50-50 between the *qui tam* relator and the Government, the possible personal gain for private plaintiffs (or "marking trolls") in false marking litigation has become unlimited. *See Donald J. Rupert, Trolling for Dollars: A New Threat to Patent Owners*, 21 No. 3 INTELL. PROP. & TECH. L.J. 1 (2009), *cited in Forest Group*, 590 F.3d at 1303.

The instant case is just such a suit. Defendant Mag Instrument ("Mag") holds numerous patents on its famous "Maglite®" brand flashlights. Plaintiff Patent Group is a *qui tam* relator who apparently is a Texas organization who has sued Mag under § 292, alleging that certain patents listed on the packaging of Mag's Maglite® flashlight have expired.

One of the threshold problems with this case is that it has no connection to this District. Mag therefore moves this Court to transfer this action under 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California.[1]  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The "center of gravity" of this case is localized to the Central District of California.  Mag is proud to be a U.S.-based manufacturer.  Mag is headquartered in Ontario, California, within the Central District of California.  Mag's manufacturing facilities, where it produces all of its flashlights, are located in the Central District of California.  Its research, design, and product development activities all occur in the Central District of California.  As a result, all decisions concerning Mag's advertising and patent marking were made in the Central District of California, and all of the products whose packaging is marked were manufactured in the Central District of California.  In fact, all of the alleged acts by Mag giving rise to this litigation occurred in the Central District of California, and all witnesses and documents relevant to this patent marking litigation are located in the Central District of California.  The only connection this case has to the Eastern District of Texas is that the *qui tam* relator filed the complaint here.  But the choice of forum by a *qui tam* relator has little to no weight under § 1404 because the real party in interest is the United States.  Transfer of this case to the Central District of California would

---

[1]  This motion is one of the five motions that Mag has filed today:  (1) a Motion to Dismiss under Rule 12(b)(1) for lack of standing under Article III of the Constitution; (2) a Motion to Dismiss under Rule 12(b)(6) and Rule 9(b) for failure to state a claim; (3) a Motion to Stay pending the Federal Circuit's decision on the same standing issue raised in Mag's 12(b)(1) motion in a similar false marking case that the district court dismissed for lack of standing; and (4) a Motion to Dismiss because Patent Group's complaint is duplicative of an earlier filed complaint under 35 U.S.C. § 292 covering the same false marking claims; and (5) a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), because the balance of the conveniences weighs heavily in favor of transferring this case to the Central District of California.  In the interest of judicial economy, Mag respectfully requests that the Court consider the Motions to Sever and Transfer first, such that the same district court that otherwise will be dealing with the merits of the case (*i.e.*, the transferee court, if the Court grants the Motion to Transfer, or this Court, if the Court denies the motion) can address the remaining substantive motions.

serve the convenience of the parties, the convenience of the witnesses, and the interests of justice.

## II.

## ARGUMENT

### A.   Standards for Section 1404(a) Transfers

The Fifth Circuit recently clarified the standard that district courts within the circuit should apply in determining motions to transfer venue.  *See In re Volkswagen of America, Inc.,* 545 F.3d 304 (5th Cir. 2008) (en banc) (hereinafter "*Volkswagen*").  The *Volkswagen* court held that the "statute requires only that the transfer be '[f]or the convenience of the parties, and in the interest of justice."  *Id.* at 314.  In interpreting this standard, the court emphasized that although some deference must be shown to the plaintiff's choice of venue, that deference is outweighed where the moving party shows "good cause."  *Id.*  Good cause is shown "[w]hen the movant demonstrates that the transferee venue is clearly more convenient" than the plaintiff's choice of venue.  *Id.*

The Supreme Court has emphasized that motions for transfer under § 1404(a) should be decided on "an individualized case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  The decision whether to transfer is left to the broad discretion of the trial court.  *See Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998).

The analysis of the merits of a § 1404(a) motion to transfer is a two-part inquiry.  *See Volkswagen,* 545 F.3d at 314.   First, the Court must determine if the case might have been brought in the transferee court.  *Id.*  Second, the court must determine whether the balance of factors under § 1404(a) weighs in favor of transferring the action to the transferee court.  *Id.*

Under *Volkswagen*, the court is to consider several "private" and "public interest" factors in order to determine whether a transfer of venue is clearly more convenient.  The private interest factors are as follows: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interest factors are as follows: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws.  *Id*.[2]  None of these factors are dispositive, and they are not necessarily exhaustive or exclusive.  *Id*. (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp*., 358 F.3d 337, 340 (5th Cir. 2004)).

These factors weigh heavily in favor of transfer to the Central District of California, where suit could have, and should have, been brought.

**B.**     **Suit could have been brought in The Central District of California because Mag is headquartered in that district.**

There is no question this suit originally could have been filed in the United States District Court for the Central District of California.  First, Mag is headquartered in the Central District of California.  Patent Group correctly alleges that Mag's principal place of business is in Ontario, California, which is within the Central District of California. (Complaint ¶ 2).  Declaration of James Zecchini, attached as Exhibit A, ¶ 3 (hereinafter "Zecchini Declaration").  Therefore, Mag "resides" in that district (28 U.S.C. § 1391(b)(1)),  "a substantial part of the events or omissions giving rise to the claim occurred" in that district (*id*. § 1391(b)(2)), Mag is "subject to personal

---

[2] Although these public and private interest factors are developed from *forum non conveniens* case law, the *Volkswagen* decision makes clear that the "substantially outweigh" test required for a finding of *forum non conveniens* is inapplicable and too high a standard to apply to a motion to transfer venue. 545 F.3d at 314.

jurisdiction" in that district (*id.* § 1391(c)), and Mag can be "found" in that district (*id.* § 1395(a)).

## C.   Relator Plaintiff's Choice of Forum is Entitled to Little Deference.

The only factor on Patent Group's side of the scale is its decision to file this *qui tam* action in this District.  For two significant reasons, Patent Group's choice of forum in this action should carry little weight in this Court's consideration of Mag's motion to transfer.

First, Patent Group is a *qui tam* relator.  In a *qui tam* case, the United States is the real plaintiff in interest.  *Timson v. Simpson*, 518 F.3d 870, 873 (11th Cir. 2008); *U.S. v. Texas Tech Univ.*, 171 F.3d 279 (5th Cir. 1999).  "Accordingly, federal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions."  *United States ex rel. Roop v. Arkray* USA, 2007 WL 844691, *2 (N.D. Miss. 2007)(collecting cases).  In *qui tam* actions, as in class actions, the plaintiff's choice of forum has little or no weight because the potential plaintiffs "are dispersed or have no real interest in the outcome of the action or in litigating in the mutually selected forum."  15 WRIGHT, MILLER & COOPER § 3848, at 127-29.  The Supreme Court explained the rationale for this view in the context of a shareholders' derivative action:

> [W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom with equal right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Koster v. Lumbermens Mut*. Cas. Co., 330 U.S. 518, 524 (1947).  Thus, Patent Group's choice of forum "should be given relatively little weight*."  United States ex rel. LaValley v. First Nat'l Bank of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985).

Second, the Eastern District of Texas has no demonstrable connection to the events at issue in this action. Courts in the Fifth Circuit have held that when the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration. *Volkswagen*, 545 F.3d at 304.

In sum, Patent Group's decision to sue Mag for false patent marking here, when this District has no connection with the acts at issue, carries very little weight. *See PartsRiver, Inc. v. Shopzilla., Inc. ,*2009 WL 279110 (E.D. Tex., Jan. 30, 2009) ("*PartsRiver*"). As shown below, all the other relevant factors weigh in favor of granting Mag's motion to transfer venue to the Central District of California.

**D.      All Private Factors Weigh in Favor of Transfer to the Central District of California.**

The Eastern District has received an influx of motions to transfer venue in patent cases since the decisions favoring transfer were rendered in the Fifth Circuit's *Volkswagen* decision, and by the Federal Circuit in *In re TS Tech USA Corp*, 551 F. 3d 1315 (Fed. Cir. 2008) and *In re Genentech, Inc*., 566 F.3d 1338 (Fed. Cir. 2009). Last year, Eastern District Chief Judge David Folsom issued a non-published opinion in which he reviewed many of the Eastern District's post-*Volkswagen* transfer opinions, and distinguished those where transfer was warranted from those where it was not. *ICHL, LLC v. NEC Corp. of America*, 2009 WL 1748573 (E.D. Tex., June 19, 2009) ("*ICHL*"). Judge Folsom noted that the central question is whether or not the underlying dispute is focused on some localized region away from the Eastern District of Texas. *Id*., *2. Here, the relevant events, witnesses, and evidence are virtually all located in and around the transferee forum, the Central District of California. They are not scattered throughout the country, and they are certainly are not located in the Eastern District of Texas. Thus, this factor weighs substantially in favor of transfer.

1.       **Sources of Proof Are Located in California.**

     a.       **Virtually All of the Witnesses Are Located in California.**

The crucial fact witnesses in this action – third parties as well as Mag employees – all reside in California, with most in the Central District of California. Zecchini Dec. ¶ 2.  These facts support the "regional" nature of this dispute and support transfer to the Central District of California.  *See PartsRiver*, 2009 WL 279110*; see also Ross v. Buckeye Cellulose Corp*., 980 F.2d 648, 655 (11th Cir. 1993)(holding that district court did not abuse discretion in transferring venue when it was reasonable to assume that overwhelming majority of witnesses whose testimony might be relevant to the trial resided in the transferee forum).

There are numerous potential third-party witnesses in the Central District of California, including the following:

- John Sebourn of Custom Lithograph, located in Los Angeles, who may provide testimony regarding the use of patent designations used on blister cards included in the packaging of Mag's product at issue and made by his company;

- Jeff James of Eclipse Printing & Graphics, located in Ontario, California, who may provide testimony regarding the use of patent designations used on warranty instruction sheets included in the packaging of the product at issue and made by his company;

- Chuck Swartzlander of Preferred Box, located in Ontario, California, who may provide testimony regarding the use of patent designations of cardboard boxes for Mag's product at issue and made by his company;

- Joe Johnson and George Anderson of BDO Seidman, LLP, the regular outside accountants for Mag, who may provide testimony on the per-article costs and

profitability of the products at issue, which would be directly relevant to the size of the penalty assessed per article should Patent Group otherwise prove its claim;

- Norm Marshall of Maxcom, Inc. of Sun Valley, California, who may provide testimony on Mag's advertising as it relates to media and product placement;

- Charles Kertell, Esq., a lawyer formerly in the Los Angeles office of Jones Day and now with Dickstein Shapiro, LLP in its Irvine, California office, who reviewed and provided legal advice regarding Mag's advertising and packaging before this lawsuit was filed, including the patent designations for Mag's products, and whom Mag may call to support an advice-of counsel defense and corroborate that Mag had no deceptive intent with respect to the patent designation at issue;

- Michele Fiorentine, a paralegal with Jones Day in Los Angeles, who is the custodian of various files containing Mag's product advertisements and, as a result of her working closely with Mag for many years in litigation, including patent litigation, is very familiar with the types and locations of documents that will be relevant to this case.

- Ted Maceiko, Esq., a lawyer in the Los Angeles office of Jones Day who is involved in the prosecution of Mag's patents and who Mag may call regarding the patented nature of Mag's products.

In addition to the numerous third-party witnesses listed above, the testimony of several Mag officers and employees, all of whom reside in California, will be critical to this case. These Mag witnesses include Anthony Maglica, Mag's President and Owner; James Zecchini, Mag's Corporate Vice-President; Jerrold Reilly, in-house counsel to Mag; David Hefner, Mag's

Manager of Marketing Communications; Gus Hawthorn, Mag's Director of Engineering; and Cody Becker, Mag's head of IT. Zecchini Dec. ¶ 2 A-D.  Among other subjects, these corporate officers and employees will testify that Mag did not advertise its products with an intent to deceive, which is a core issue in this case.  Further, the testimony of additional California-based Mag employees may be required as the case develops.  Finally, there are no critical witnesses that Mag knows of who reside in Texas. Zecchini Dec. ¶ 2.

### b.    The Overwhelming Majority of Critical Documents are in California.

The overwhelming majority of documentary evidence will be in California at Mag's headquarters. Zecchini Dec. ¶ 3.  It would be more expensive and difficult to either transport or copy these documents for transport to Texas.  Likewise, access in Texas to third-party documents located in California would impose increased expense and hardships on the parties and producing entities.  Like the location of witnesses, this factor supports transferring this action to the Central District of California.  *See, e.g., Volkswagen,* 545 F.3d 304; *Ross*, 980 F.2d at 655 (holding that district court did not abuse discretion in transferring venue where it was undisputed that plant and employment records relevant to lawsuit were located within transferee forum); *Ardco*, 25 U.S.P.Q. at 1386-87 (granting transfer where all of the documents, "including any design documents, manufacturing documents, and marketing and sales documents," and the custodians of these documents were located in California).

### 2.    The Availability of Compulsory Process Favors the Central District of California.

In order to defend against this case, Mag will need to call former and current employees to testify regarding the design and development of the relevant products as well as to testify regarding Mag's sale and marketing of its products.  As explained above, all pertinent third party witnesses reside in or near the Central District of California.  Respectfully, this Court cannot

issue compulsory process for these witnesses, as they live halfway across the country; but the Central District of California can do so since each witness resides either within the District or within subpoena range. With respect to compulsory process, the facts in this case are similar to the Federal Circuit case *In re Genentech.* "[T]here is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly." *In re Genentech*, 566 F.3d at 1345; *see also Novartis Vaccines and Diagnostics, Inc. v. Wyeth, et al.*, 2010 WL 1374806 (E.D. Tex., March 31, 2010). As the Central District of California has subpoena power over a number of non-party witnesses, whereas the Eastern District has no subpoena power, this factor weighs clearly in favor of transfer.

### 3. The Cost of Attendance of Willing Witnesses Favors the Central District of California.

The third private interest factor is the cost of attendance for and convenience of willing witnesses. "The court is to consider whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer....Additionally, the convenience of non-party witnesses is accorded greater weight than that of party witnesses." *ICHL*, 2009 WL 1748573, *10 (quoting *Shoemaker v. Union Pacific Railroad Co*., 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002).

Importantly, the Fifth Circuit has instituted a 100-mile threshold rule when evaluating the inconvenience to witnesses. A forum is proportionally more inconvenient when the distance between an existing venue for trial of a matter and a proposed venue, in which willing witnesses reside, is more than 100 miles. *In re Volkswagen AG,* 371 F.3d 201, 204-205 (5th Cir. 2004). Here, presuming Mag's witnesses are willing, the approximate 2,000 mile distance between

California and Texas emphasizes the fact that the Central District of California is indeed the only appropriate venue.  As stated by the Volkswagen court: "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *Id.*

> **4.** **Other Private Factors: The Center of Gravity of This Litigation Lies Squarely in the Central District of California.**

The alleged false patent marking claim at issue arose in the Central District of California, where Mag is headquartered.  The "place of the alleged wrong" or "location of the operative events" is an important factor in the § 1404(a) analysis.  *In re Horseshoe Entertainment*, 337 F.3d 429, 435 (5th Cir. 2003).  This is especially true in patent cases.  *See Proshot Golf v. Leading Edge Techs.*, 1996 WL 673265, *2 (N.D. Tex. 1996) (In an infringement case, the court said, "[B]ecause the allegedly infringing technology was marketed and sold nationwide, the "center of gravity" of activity relating to the infringement suit is logically the place where the infringing party designed and manufactured the technology.").  "Transfer to a corporate defendant's place of business is particularly likely in patent. . . cases." 15 WRIGHT, MILLER & COOPER § 3849, at 181-82 (collecting cases).

In this case, the "center of gravity" is the Central District of California.  All of Mag's conception, reduction to practice, design and development work was done in California.  All of its marketing decisions emanate from California. Zecchini Dec. ¶ 4; *see, e.g. Laitram v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609-10 (E.D. La. 2000) ("A fundamental principle" guiding the Court's analysis is that 'litigation should proceed "in that place where the case finds its 'center of gravity.'"" ...Relevant considerations in determining the center of gravity in a given case include the location of a product's development, testing, research, and production, and the

place where marketing and sales decisions were made.")(citations omitted); *Fuji Photo Film Co. v. Lexar Media, Inc*. 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006)(transferring patent infringement action to the Northern District of California, where the relevant products were designed, developed, and produced).

Section 1404(a) also refers expressly to the "convenience of the parties."  For these reasons, it would certainly be more convenient for this action to proceed in the Central District of California.   Patent Group's convenience does not outweigh the collective convenience established by the foregoing facts. *See Ardco Inc. v. Page, Ricker, Felson Marketing, Inc*. 25 U.S.P.Q. 2d 1382, 1386-87 (N.D. Ill. 1992)(despite plaintiff corporation's filing patent case in district where its headquarters and principal place of business were located, granting motion to transfer to Central District of California because "[a]ll of [defendant's] activities in researching, designing, building prototypes, and manufacturing… occurred in the Central District of California. . . [and] almost all of the many witnesses who will be called by [defendant] to prove its case" are located in California); *see also PartsRiver,* 2009 WL 279110.

Thus, in the interests of justice and for the convenience of the parties and witnesses, the Central District of California is clearly the most appropriate venue.

**E.**   **Public Interest Factors Weigh in Favor of the Central District.**

**1.**   **The Central District of California is No More Congested Than the Eastern District of Texas.**

According to the statistical reports provided by the Administrative Office of the Courts, trials in the Central District of California are completed in approximately the same amount of time as those in the Eastern District of Texas.[3]  Thus, this factor is neutral.

---

[3] See www.uscourts.gov/caseload2007/tables/C05Mar07.pdf.

2.      **The Eastern District Has No Local Interest.**

Transfer is appropriate where none of the operative facts occurred in the division and where the division has no particular local interest in the outcome of the case.  *See In re Volkswagen*, 545 F.3d at 318.  Although Mag has sold flashlights in this District, Mag sells its products in all 50 states, and its Texas sales are only a relatively small percentage of its overall nationwide sales.  Zecchini Dec. ¶ 5.  Under the authority of the Fifth Circuit, and elsewhere, this is simply not enough to confer a local interest upon the Eastern District in adjudicating this case.  *See, Volkswagen,* 545 F.3d at 318 (finding no local interest based on the local availability of a product subject to a product liability claim, as such rationale could apply to virtually any judicial district in the U.S. and would leave no room for consideration of those actually affected by the controversies and event giving rise to the case); *see also TS Tech*, 551 F.3d at 1321 (disagreeing with the Eastern District's opinion that its citizens had a "substantial interest" in having the case tried locally because several of the vehicles were sold in the district, the Federal Circuit stated that "vehicles containing [the allegedly infringing technology] were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."); *Anchor Wall Systems, Inc. v. R&D Concrete Products, Inc*. 55 F. Supp. 2d 871, 874-75 (N.D. Ill. 1999)(granting motion to transfer venue and stating that "[s]ales alone are insufficient to establish a substantial connection to the forum if defendant's goods are sold in many states"); *Boreal Laser Inc. v. Coherent, Inc*. 22 U.S.P.Q. 2d 1559, 1560 (S.D.N.Y. 1992)(granting transfer to Northern California where "facts underlying the cause of action have no material connection to this forum," "relevant documents, records, and production facilities" were in California, and stating that "sales alone are not enough to establish a material connection to the forum if, as is true here, '[d]efendants goods are sold in many

states.'")(quoting *Matra Et Manurhin, v. International Armament Co*., 628 F. Supp. 1532, 1536 (S.D. N.Y. 1986)).

The Central District of California, on the other hand, has a significant local interest in hearing this case.   Indeed, there is an interest in "having localized controversies decided at home."   *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).   Patent Group's decision to file the complaint here is the *only* nexus this action has with the Eastern District of Texas.   Conversely, the factual events surrounding the false patent marking claim occurred at Mag's corporate home in Ontario, California. Zecchini Dec. ¶ 3.   In addition, crucial fact witnesses in this action – third parties as well as Mag employees – all reside in California, with most in the Central District of California.   Zecchini Dec. ¶ 2.   Overall, this litigation's center of gravity is in California's Central District.   Transferring this matter there will serve the interests of justice because the citizens of California have a greater interest in this dispute than the citizens of Texas. "[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently may have a particular interest in the proper resolution of the dispute." 15 WRIGHT, MILLER & COOPER § 3854, at 293.   As a general rule in patent cases, "the preferred forum is that which is the center of gravity of the accused activity."   *Ricoh Co. v. Honeywell, Inc*. 817 F. Supp. at 482 n. 17.

Furthermore, the State of California has an interest in monitoring its corporations to ensure that they establish policies and procedures that protect its citizenry. The State of California has a more compelling interest than the State of Texas in the adjudication of the allegedly wrongful patent marking activities of a resident California corporation at issue in this case.   Courts in recent cases have transferred several false marking cases to the defendant's home districts.   *See Brule Research Assocs. v. A.O. Smith Corp*. No. 1:08cv977, Doc. 21 (E.D. Va.

Dec. 19, 2008)(Brinkeman, J.)(transferring false marking case from Eastern District of Virginia to Eastern District of Wisconsin, where defendant headquartered)(attached as Exhibit 1); *San Francisco Tech. v. Adobe Sys.* No. C 09-6083 RS, Doc. 194 (N.D. Cal. April 13, 2010)(Seeborg, J.)(ordering transfers from Northern District of California to the District of Minnesota, the Southern District of Indiana, and the Northern District of Georgia, where three defendants were headquartered respectively)(attached as Exhibit 2). The result here should be the same.

 **3.**   **Both Forums are Familiar with the Law and No Conflicts Should Arise with Transfer of this Case to the Central District of California.**

 The third (familiarity of the forum with governing law) and fourth (reducing likelihood of conflict of laws) public interest facts are not significant here, as the matter arises entirely under patent law.  As federal law controls this lawsuit, either court is well suited to preside over this matter with respect to the governing law issue.  Similarly, because federal law primarily applies, it is not anticipated that many (if any) true conflict of laws issues will arise.

**III.**

**CONCLUSION AND PRAYER FOR RELIEF**

 The factors under 28 U.S.C. § 1404(a) weigh in favor of transferring this action.  Patent Group's choice of forum here has little or no weight given that this is a *qui tam* action. Otherwise, this case's center of gravity lies entirely within the Central District of California.  The Court should transfer it there for the convenience of the parties, the convenience of the witnesses and in the interests of justice.

 WHEREFORE, PREMISES CONSIDERED, Defendant Mag Instrument prays this Court will enter an order transferring this action to the United States District Court for the Central District of California.

Respectfully submitted,

/s/ Katie Anderson (JPA by permission)
**KATIE ANDERSON**
State Bar No.  00789631
Katie.anderson@strasburger.com
**LAUREN T. BECKER**
State Bar No. 24046983
Lauren.Becker@strasburger.com
**STRASBURGER & PRICE, LLP**
901 MAIN STREET, SUITE 4400
DALLAS, TX 75202-3794
(214) 651-4300
(214) 651-4330 Fax

**ROBERT C. WEISS**
**LAW OFFICES OF ROBERT C. WEISS**
3770 HIGHLAND AVENUE, SUITE 203
MANHATTAN BEACH, CA 90266
(310)545-9854
(310)546-8590 Fax

**JENNIFER PARKER AINSWORTH**
State Bar No. 00784720
jainsworth@wilsonlawfirm.com
**WILSON, ROBERTSON & CORNELIUS, P.C.**
One American Center
909 ESE Loop 323, Suite 400
Tyler, TX 75701
Telephone: 903-509-5000
Facsimile: 903-509-5091

**ATTORNEYS FOR DEFENDANT**
**MAG INSTRUMENT, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2010, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

  /s/ Jennifer P. Ainsworth
Jennifer P. Ainsworth

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that on June 21, 2010, counsel for Mag Instruments, Katie Anderson, conferred with Ken W. Good, counsel for Plaintiff Patent Group, in accordance with the meet and confer requirement in Local Rule CV-7(h).  We tried to resolve the issues in the instant Motion to Transfer, but discussions have conclusively ending in an impasse, and the Motion is opposed, leaving an open issue for the Court to resolve.


   _/s/ *Jennifer P. Ainsworth*_____
Jennifer P. Ainsworth